UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 14-124 (RMC) |
| | : | |
| v. | : | |
| | : | |
| LINWOOD BARNHILL JR., | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court accept the proposed plea agreement pursuant to Rule 11(c)(1)(C), in which the government and defendant have agreed upon a sentence of 84 months of incarceration. The government further requests that the Court sentence the defendant to 120 months of supervised release, with the conditions recommended by United States Office of Probation. The defendant is required by D.C. statute to register as a sex offender for life.

## I.      BACKGROUND

On June 20, 2014, the defendant pled guilty to two counts of Pandering a Minor pursuant to 22 D.C. Code §§ 2705(a)(2)(C) and (c)(2) and one count of Possession of Child Pornography pursuant to 18 U.S.C. § 2252A(a)(5)(B). The Pandering a Minor charges arose out of separate incidents involving Victim A, a 16-year-old female, and Victim B, a 15-year-old female. The Possession of Child Pornography charge arose out of a separate incident involving Victim C, a 17-year-old female.

1

**PANDERING A MINOR – VICTIM A**

On December 3, 2013, officers with the Metropolitan Police Department ("MPD") Youth Investigations Division were involved in an investigation into the whereabouts of a 16-year-old female (hereinafter referred to as "Victim A") who had been reported missing by her family. In connection with their investigation into the missing juvenile, officers had received information that Victim A may be located at a residence in Washington, D.C. which was confirmed as the residence of MPD Officer Linwood Barnhill, Jr. ("defendant").

On December 3, 2013, at approximately 7:00 p.m., officers responded to the defendant's residence. When officers arrived at the residence, a two-bedroom apartment, they were met by the defendant. When officers asked if there was anybody else in the residence, they learned that two females were in what was later identified as the defendant's bedroom. One of the females was the missing juvenile, Victim A, and the second was an adult female. The officers smelled burning marijuana and observed the adult female styling Victim A's hair. The adult female was uncooperative with police and refused to give her name or contact information.

During the ensuing investigation, police learned from Victim A that she was 16-years-old. She met the defendant approximately two weeks prior to December 3, 2013, while in a local convenience store in Washington, D.C. The defendant, who introduced himself as "Malik,"[1] asked Victim A if she would be interested in modeling, gave her his phone number, and told her to contact him if she decided she was interested. Later that night, Victim A used a friend's cell phone to send a text message to the defendant, and he called her back.

---

[1] The defendant identified himself only as "Malik." He never directly or indirectly identified himself as a police officer, and the victim was never aware that the defendant was a police officer, nor did she ever see a police uniform, badge, weapon, or any other law enforcement-related equipment.

Over the course of the next two weeks, Victim A went to the defendant's apartment on approximately two occasions. On each of those occasions, the defendant picked up Victim A in his 2004 black Lincoln Navigator and drove her to his apartment.

On one of these occasions, the defendant asked Victim A to bring "heels and some nice underwear." Victim A brought "sparkly heels" and Victoria's Secret underwear. When they arrived at the defendant's residence, the defendant brought Victim A into his bedroom where he took a series of clothed and unclothed photographs with his cell phone.[2] The defendant told Victim A that he was going to send the photos to a man who was interested in "an appointment" with her. The defendant explained that he was going to set up a "date" for her to engage in sexual acts with this man, who would pay her eighty dollars. The defendant told Victim A that she would keep sixty of the eighty dollars, and that she would give twenty dollars to the defendant. The defendant arranged to have Victim A's hair done in preparation for the "date," and on December 3, 2013, when police arrived at the defendant's apartment, the adult female who was present was in the process of styling Victim A's hair. Victim A never actually engaged in prostitution for the defendant, she never met or communicated with the man the defendant was referring to, and she did not know his name or any other identifying information.

Throughout the investigation, Victim A found it extremely difficult to talk about the facts of the offense. Victim A, who had been reported as a missing person eight times prior to December 3, 2013, when police discovered her in the defendant's apartment, has clearly experienced difficulties in life which have been exacerbated by the defendant's exploitation of her apparent vulnerabilities. Victim A expressed great concern about being identified publicly

---

[2] Victim A never saw these photos and they were never found by law enforcement during their searches of the defendant's cell phones and computer, which were seized from his apartment pursuant to a search warrant.

during the investigation and prosecution of this case, and both she and her mother expressed an extremely strong desire for a pre-trial resolution of this case in order to spare Victim A from having to testify at a public trial.

## PANDERING A MINOR – VICTIM B

During the course of the investigation, law enforcement received information about a 15-year-old female who may have engaged in prostitution-related activities with the defendant. Investigators identified and interviewed 15-year-old Victim B, who disclosed that she met the defendant during September 2013. Victim B was with a female friend at a bus stop in the area of Jasper Street and Alabama Avenue, S.E., in Washington, D.C. The defendant, who introduced himself as "Malik,"[3] asked Victim B if she was interested in modeling. Victim B told the defendant that she was interested, and agreed to go to the defendant's apartment to take "modeling photos." Victim B got into the defendant's 2004 black Lincoln Navigator to go to his apartment.

At the apartment, the defendant took Victim B to his bedroom, where he used a cell phone to take photos of her. He took several photos of Victim B, clad in lingerie and high heels. The defendant also took naked photos of Victim B, which were recovered by law enforcement on one of the cell phones seized from the defendant's apartment pursuant to a search warrant.[4] The defendant told Victim B that he plans bachelor parties, and he asked her if she would be

---

[3] The defendant identified himself only as "Malik." He never directly or indirectly identified himself as a police officer, and the victim was never aware that the defendant was a police officer, nor did she ever see a police uniform, badge, weapon, or any other law enforcement-related equipment.

[4] The naked photos of Victim B depict her full body and are taken from a distance. These photographs do not meet the legal definition of child pornography. During the investigation, law enforcement found no evidence that these photos were used in any online advertisements or solicitations for prostitution, nor any evidence that these photos were distributed for the purpose of soliciting prostitution.

interested in engaging in escort services for him. The defendant and Victim B exchanged cell phone numbers, and Victim B left the apartment.

Later that night, the defendant contacted Victim B by cell phone and told her that he had someone who wanted to meet her for a "date." The defendant told Victim B that the man, who went by "Don," wanted to engage in oral and vaginal intercourse with her. The defendant explained to Victim B that she was to charge customers eighty dollars for vaginal intercourse and either fifty or sixty dollars for oral sex. He instructed Victim B not to kiss "Don" or to allow him to give her "hickeys" or to digitally penetrate her. The defendant also instructed her to use condoms, and told her that he would provide them for her. On a subsequent day, Victim B went to the defendant's apartment and engaged in the sexual acts with "Don" in the defendant's bedroom. The defendant collected the money from "Don" and gave Victim B a portion of the proceeds. Afterwards, Victim B told the defendant that she never wanted to do that again. After she left the defendant's apartment that day, she never saw, spoke to, or heard from the defendant again.

During the investigation, Victim B was reluctant to cooperate with police or prosecutors. Victim B, like Victim A, had difficulty talking about the facts of the offense. Victim B, who had been reported as a missing person 18 times prior to the investigation in this case, has clearly experienced difficulties in life which have been exacerbated by the defendant's exploitation of her apparent vulnerabilities. Victim B, who is unavailable to speak to the government prior to sentencing, has not wanted to speak to police or prosecutors about the sentencing in this case. The resolution of this case would spare her from the pain and humiliation caused by having to testify at a public trial.

**POSSESSION OF CHILD PORNOGRAPHY – VICTIM C**

During the course of their investigation law enforcement also identified a 17-year-old female, Victim C. Victim C met the defendant in the beginning of October 2013. Victim C was at a bus stop near Minnesota Avenue and Benning Road S.E., in Washington, D.C., when the defendant pulled up in his black Lincoln Navigator. The defendant introduced himself as "Malik"[5] and immediately asked Victim C if she had ever modeled before and stated that he could "get her out there" in the modeling field. Victim C gave the defendant a contact number. The following day, the defendant called Victim C and they talked and text messaged off and on for the next three weeks.

In the afternoon of October 25, 2013, Victim C went to the defendant's apartment. The defendant again talked about getting Victim C into the modeling business. He offered to send her pictures to a modeling agency and told her she could make a lot of money. The defendant brought Victim C into his bedroom where he took multiple photos of her, both clothed and unclothed. After taking the photos, the defendant asked Victim C to perform oral sex on him. Victim C consented.[6] During the sexual act, the defendant held his cellular phone with his outstretched arm and recorded the act. That video was recovered from a cell phone seized from the defendant's residence pursuant to a search warrant. In the video, Victim C's face is visible, as well as the lower half of the defendant's body and his clothing, and the defendant's bedroom

---

[5] The defendant identified himself only as "Malik." He never directly or indirectly identified himself as a police officer, and the victim was never aware that the defendant was a police officer, nor did she ever see a police uniform, badge, weapon, or any other law enforcement-related equipment.

[6] As Victim C was 17 years old at the time of the offense, and due to the fact that the defendant was not in a "significant relationship" with the victim, as defined under District of Columbia law, the defendant's engaging in the sexual act with the victim's consent did not constitute an act of sexual abuse under District of Columbia or federal law.

is clearly recognizable from the interior features and items of furniture.[7]  The defendant made no mention that day of prostitution or "dates" or sexual acts with other men.  On a subsequent day, however, the defendant sent a text message to Victim C on her friend's cell phone.  He told Victim C that he knew people who would want to have sex with her.  Victim C told the defendant that she was not interested in doing that.[8]  From that point forward, Victim C never saw or spoke with the defendant again, and he did not attempt to communicate with her further.

## II.   STATUTORY PENALTIES

Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), carries no mandatory minimum sentence and a maximum sentence of 10 years of imprisonment, pursuant to 18 U.S.C. § 2252A(b)(2); a fine of not more than $250,000, pursuant to 18 U.S.C. § 3571(b)(3) or twice the pecuniary gain or loss, pursuant to 18 U.S.C. § 3571(d); an order of restitution; a period of supervised release – after any period of incarceration – of not less than five years and up to life pursuant to 18 US.C. § 3583(k); and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

Pandering a Minor, in violation of 22 D.C. Code §§ 2705(a)(2)(C) and (c)(2) carries no mandatory minimum sentence and a maximum sentence of 20 years of imprisonment; a fine of not more than $20,000; and a term of supervised release of not more than life pursuant to 24 D.C. Code § 403.01(b)(4)(B).

Pursuant to the Sex Offender Registration and Notification Act, 18 U.S.C § 2250, 42 U.S.C. §§ 16911(3)(a)(1) and 16915(a)(2) ("SORNA"), the defendant is required to register as a

---

[7] This video was recovered in a law enforcement search of one of the defendant's cell phones.  No evidence was discovered indicating that the defendant distributed or intended to distribute this video to any other person.

[8] These text messages were never recovered during law enforcement searches of the defendant's cell phones and computer, which were seized from his apartment pursuant to a search warrant.

sex offender for a minimum period of 25 years, and to keep the registration current in jurisdictions where he resides, is employed or is a student. Further, pursuant to 22 D.C. Code § 4001(C) and 22 D.C. Code § 4002 (b)(4) ("SORA") the defendant is required to register as a sex offender for life based on the fact that there are multiple victims in this case.

## III.   GOVERNMENT'S RECOMMENDATION

### A.   Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid

unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

**B.      Basis for the Government's Recommendation**

The government submits that the agreed-upon sentence of 84 months of incarceration is appropriate and warranted in this case based on the factors in 18 U.S.C. § 3553(a). In addition, the government recommends 120 months of supervised release, with the specific conditions of supervision recommended by the United States Office of Probation. The recommended sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

**1.      The Nature and Circumstances of the Offense**

The offenses in this case are undeniably egregious. The defendant took advantage of three separate victims, who were vulnerable young females, and exploited them sexually for his own purposes. The government submits that a period of incarceration of 84 months addresses the serious nature of the offenses in this case and, at the same time, is consistent with the nature and circumstances of this defendant's conduct.

**a.  Pandering a Minor**

This is a very serious case in which the defendant exploited and attempted to exploit two vulnerable young women – chronic runaways – aged fifteen and sixteen. In the case of Victim A, the defendant's intent to have this 16-year-old engage in prostitution is clear, all for the sake of the defendant's own financial benefit (albeit an extremely minor benefit when compared to the vast majority of pandering cases). Had law enforcement not received and quickly followed up on information it received about Victim A's whereabouts, it is likely that Victim A would have been subjected to sexual abuse at the hands of an unidentified abuser, in the form of the "date" that the defendant arranged. Due to Victim A's vulnerability, the defendant did not need to

resort to the use of any force, threats, or intimidation to make Victim A comply with the defendant's offer to engage in prostitution for him.

Similarly, with Victim B, the defendant did not need to resort to using any force, threats, or intimidation. His strategy of enticing victims by offering his assistance in launching a "modeling" career was enough to convince Victim B to get into the car of a complete stranger and go to his apartment. Later, when the defendant offered Victim B the opportunity to make money immediately by engaging in the "date' with "Don," she agreed without hesitation. After Victim B informed the defendant that she did not want to engage in prostitution again, the defendant never attempted to persuade her otherwise. Indeed, the defendant never contacted the victim again.

During the execution of a search warrant in the defendant's apartment, police recovered a large volume of unused condoms in the defendant's bedroom. Despite this indication that the defendant may have had aspirations to engage in numerous sexual encounters himself, or to entice young women to engage in numerous sexual encounters, the evidence adduced during the investigation revealed only one minor who engaged in an act of prostitution for the defendant and one who agreed to, but ultimately did not, engage in an act of prostitution for him. During the investigation, law enforcement recovered clothed and unclothed photos of other women, none of whom were identified as minors. Investigators also identified each of the females whose names were written on a mirror seized from the defendant's apartment and found no additional evidence of any other victims of child sexual exploitation. Investigators did speak with other witnesses who were young adults and of whom the defendant inquired to see if they had an interest in engaging in prostitution for him. Each of the women who told the defendant she was not interested indicated that he did not attempt to pressure or convince them to change their

10

mind. One of the young women continued to communicate with the defendant and socialized with him at his apartment even though she was not interested in engaging in prostitution for the defendant or engaging in sexual acts with him.

### b. Possession of Child Pornography

During the course of the pandering investigation, law enforcement recovered one video of the defendant and Victim C, a 17-year-old female, engaging in a sexual act. Victim C disclosed that the sexual act occurred on only one occasion, and that the defendant did not use force or coercion and did not mention prostitution. At the time Victim C engaged in the sexual act with the defendant, she believed the defendant would be able to help her launch a "modeling" career. Because Victim C was 17 years old at the time and the defendant was not in a "significant relationship" with the victim, and because Victim C consented to the sexual act and the defendant did not use force or threats to induce her compliance, the defendant did not violate District of Columbia or federal criminal law by engaging in the sexual act. The video recording of the sexual act with Victim C, a minor, is clearly an extremely serious crime. However, there was no evidence recovered by law enforcement that the defendant distributed or intended to distribute the video recording of the sexual act he engaged in with Victim C.

Additionally, law enforcement conducted extensive forensic examinations on eight cell phones and one computer which were seized from the defendant's apartment. There was no evidence recovered which would suggest that the defendant is interested in collecting child pornography, or any other indication that the defendant is a pedophile. This is the case of an individual who preyed, mostly unsuccessfully, on vulnerable young women and for that the defendant will be severely punished. It is not, however, a case involving a pedophile with a sexual interest in children.

### c. Victim Impact

While the government intends to file, under seal, a Victim Impact Statement from Victim A if it is received prior to sentencing, when discussing the recommended sentence, it is important that the Court understand the extraordinary needs and concerns of the very vulnerable victims in this case. The undersigned prosecutor met with Victim A at length during the course of the investigation of this case. Subsequent to the plea, the undersigned prosecutor has met with Victim A's mother and Victim A's counsel to discuss a Victim Impact Statement as well as to address any questions or concerns. Victim A, who intends to submit a Victim Impact Statement but has not done so to date, has, since the beginning of this case, been extremely concerned about the prospect of going to trial. Victim A is a fragile young woman who has made clear that she would like to avoid a trial or further involvement and would like to remain anonymous. Victim A and her family have strongly indicated to the government that they would like to see this case resolved as promptly as possible and without their further involvement in the judicial process.

It has also been made clear to the government that Victim B is in a very fragile state and would be unable or unwilling to participate in a trial of this matter. Finally, the government has reached out to Victim C on numerous occasions. During the course of the investigation, Victim C was uncooperative and, at least initially, refused to meet with the government. While Victim C eventually reluctantly complied with requests to meet during the investigation, Victim C, through her mother, told law enforcement and government counsel that Victim C did not want anything more to do with the case, and, in fact, asked the government to stop calling or attempting to contact her in any way.

It is the clear desire of the victims in this case to move forward without the cloud of a trial or continued court proceedings looming in the future. The plea and recommended sentence

protects the privacy of these young victims, and prevents them from having to relive their victimization in a public setting. The plea and recommended sentence also allow the victims the opportunity to heal, to move forward, and to put this matter behind them while, at the same time, subjects the defendant to a significant period of incarceration.

### 2.    History and Characteristics of the Defendant

The defendant, an MPD police officer, has no prior criminal convictions. While the defendant worked for MPD during the commission of the offenses, the fact that the defendant was a police officer was not known to the victims and there is no evidence to suggest that the defendant ever acted under color of law. The recommended sentence in this case takes into account the fact that the defendant had a special responsibility to the community and that he violated that trust.

From a very early stage in this case, the defendant indicated his desire to accept responsibility for his actions. Through counsel, the defendant has consistently confirmed his intention to resolve this case short of trial. In light of the significant psychological toll the prosecution and prospect of a public trial has had on the victims, the value of a pre-trial disposition which would spare three very vulnerable victims from having to testify at trial cannot be underestimated.

The government also submits that a sentence of 84 months incarceration, followed by 120 months of supervised release and lifetime sex offender registration is a sentence that is sufficient but not greater than necessary, to punish this specific defendant for his specific offenses.

### 3.    Punishment, Deterrence, Protection, and Correction

A sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate

deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence of 84 months is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses. As set forth above, the recommended sentence for this defendant, who has never been incarcerated and who is almost 50 years old, and who is in poor physical and mental health, represents a significant period of incarceration. Further, 120 months of supervised release and lifetime sex offender registration represent important components of the sentence in this case and should be considered when evaluating the Section 3553 factors set forth above.

### 4.    Available Sentences

The defendant should be sentenced to a term of incarceration. The defendant is not eligible for a probationary sentence under the Guidelines, and both parties have agreed that 84 months is an appropriate sentence.

In addition, the Court should impose a term of supervised release, and the government recommends a term of 120 months. A lengthy term of supervised release is critical because it will subject the defendant to ongoing monitoring. The Court should impose all of the special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

### 5.    Avoiding Unwarranted Sentencing Disparity

The government believes that a sentence of 84 months of incarceration is appropriate in this case and would not result in unwarranted sentencing disparity. The recommended sentence is fair when compared to the sentences of other defendants who were sentenced for similar offenses.

**Pandering and Human Trafficking Cases**

In <u>United States v. Robert Brathwaite</u>, Case No. 11-CR-186 (JEB), defendant Braithwaite pled guilty to federal charges of sex trafficking of children, transportation of a minor for the purpose of prostitution, and possession of a firearm. Braithwaite was sentenced to an 11(c)(1)(C) plea to ten years of incarceration. Braithwaite recruited and prostituted at least three young juveniles on numerous occasions. Braithwaite was ultimately convicted of trafficking in relation to a 14-year-old victim. Braithwaite used threats, violence and manipulation to control his victims and retained all of the proceeds from the prostitution. Braithwaite also possessed a firearm during the commission of his crimes.

In <u>United States v. Dominique Bell</u> (Superior Court Case No. 2012-CF1-12430), defendant Bell pled guilty to one count of pandering and one count of inducing or compelling a minor to engage in prostitution. Bell, 22, was sentenced to a seven-year prison term after pleading guilty to criminal conduct related to recruiting, transporting and profiting from a 16-year-old and a 19-year-old engaged in prostitution. Bell posted the victims for sale on Backpage.com, set the victims up in hotel rooms, and travelled with them to multiple locations. The proceeds of these sexual acts would be turned over to Bell and Bell had provided strict instructions to the victims to lie to law enforcement regarding their names and ages if caught, and threatened to harm them if they cooperated with law enforcement against Bell. Bell carried both a handgun and a semi-automatic firearm with a scope attached to use for protection, and for intimidation of the victims during the course of the incidents.

**Cases Involving Child Pornography**

In <u>United States v. Nicholas Hanlon</u>, Case No. 13-CR-283 (GK), Hanlon communicated with an undercover officer he believed to be a 12-year-old child and travelled to have sex with the purported child. Subsequent to his arrest, law enforcement searched Hanlon's computer and cell phone. Pursuant to that search, law enforcement found evidence that Hanlon had been communicating via text message and email with multiple young girls. Specifically, law enforcement recovered evidence that Hanlon asked for and received explicit videos from a 12-year-old female child from the St. Louis, Missouri area and from a 15-year-old from Virginia. Hanlon pled guilty to two counts of receipt of child pornography and one count of travel with the intent to have sexual contact with a minor. Hanlon received a sentence of eight years of incarceration.

In <u>United States v. John Solano</u>, Case No. 13-CR-182 (RMC), Solano, a high school teacher, pled guilty to one count of receipt of child pornography after asking for and receiving images of a 16-year-old student's penis via text message. Solano, who communicated with numerous students and former students, was sentenced to the mandatory minimum 60 months.

The above cited pandering, trafficking and child pornography cases are all very different from the case before this Court. The government was unable to find any child pornography cases in the District of Columbia involving a 17-year-old victim. That said, the cases provide some basis for comparison. The <u>Braithwaite</u> case for example, a trafficking case involving force, threats and a firearm, resulted in a ten-year Rule 11(c)(1)(C) plea on the eve of trial. The <u>Solano</u> case, which has some similar elements to this case, resulted in a sentence of 60 months. This case, based on the conduct, the fact that the defendant was a police officer, the desire to protect the witnesses from further trauma, and the other cases involving somewhat similar conduct,

belongs somewhere between those ranges. Although none of these cases involve the exact same facts or charges as in the instant case, the government believes these cases are comparable to the defendant's case and provide an appropriate context for the recommended sentence of 84 months.

## IV.   CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 84 months, to be followed by 120 months of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender for life under the District of Columbia Code.

RONALD C. MACHEN JR.
United States Attorney

BY:   /s/_____
ARI B. REDBORD
Assistant United States Attorney
D.C. Bar 476998
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7018